

Laura E. Kogan
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Direct Dial:  216.363.4518
Fax:  216.363.4588
lkogan@beneschlaw.com

April 7, 2022

**VIA ELECTRONIC FILING**

Hon. Judge Margo K. Brodie
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Bell v. CVS Pharmacy, Inc.*, No. 1:21-cv-06850-MKB-PK
              <u>Request for Pre-Motion Conference re: Motion for Judgment on the Pleadings</u>

Dear Judge Brodie:

      This law firm represents Defendant CVS Pharmacy, Inc. ("CVS") in the above-referenced lawsuit and writes to respectfully request a pre-motion conference regarding leave to file a Motion for Judgment on the Pleadings, pursuant to Rules 12(b)(1) and 12(c).  CVS believes a conference would be beneficial in light of the fundamental defects within Plaintiff's Complaint and to apprise the Court of similar pending cases.  *See Stevens v. Walgreen, Co.*, No. 1:21-cv-10603 (S.D.N.Y.).

**I.    OVERVIEW OF ALLEGATIONS AND CLAIMS.**

      Plaintiff brings a putative class action concerning CVS-branded over-the-counter adhesive lidocaine patches (the "Products"). (Dkt. 1.)  Plaintiff asserts that the Products are advertised as "maximum strength" and "up to 12 hours" (or 8 hours, depending on the Product).  (*See id.* ¶¶ 3, 8, 11, 12.)  The crux of Plaintiff's Complaint is her belief that the Products are warranted to "reliably adhere to her body and deliver a 4% lidocaine dose for 12 hours," even while a consumer is engaging in regular activities.  (*Id.*)  Plaintiff asserts that the Products would not remain adhered for more than a few hours.  (*Id.*)  Plaintiff also claims that the Products are not "maximum strength" because she claims prescription patches can exceed 4% lidocaine and advocates for a different measure of lidocaine product strength.  (*See id.* ¶¶ 23-24.)

      Plaintiff brings claims for breach of express and implied warranty, violation of the Magnuson-Moss Warranty Act ("MMWA"), and violation of New York General Business Law ("GBL") §§ 349, 350.  Plaintiff seeks to represent a putative nationwide class and a New York state sub-class concerning three Products.  (*Id.* ¶¶ 10, 29, 30.)

      These claims are not new.  This is one of myriad similar cases pending in New York, California and Illinois, including the case before Judge Oetken referenced above.

**II.    PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF.**

      As a preliminary matter, Plaintiff's claims are based solely on past conduct: that is, *prior* purchases.  Plaintiff contends she has not purchased any of the Products since September of 2021 and that she has stopped purchasing the Products.  (Dkt. 1 ¶ 8.)  Plaintiff further asserts only that she would purchase the Products again if they "deliver[ed] a 4% lidocaine dose to her body for

'UP TO 12 HOURS.'" (*Id.*)  In other words, Plaintiff cannot be harmed again and lacks standing to seek injunctive relief.  *See, e.g.*, *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020); *Turk v. Rubbermaid Incorporated*, No. 21-cv-270, 2022 WL 836894, at *5 (S.D.N.Y. Mar. 21, 2022).

### III.   PLAINTIFF FAILS TO STATE ANY CLAIMS FOR RELIEF.

#### A.   Plaintiff's GBL Claims Should be Dismissed Because No Reasonable Consumer Would be Misled and Plaintiff Has No Damages.

To state a claim under GBL §§ 349, 350, Plaintiff must identify materially misleading conduct—that is, Plaintiff "must 'plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Turk*, 2022 WL 836894, at *7.  Plaintiff's GBL claims—indeed, all her claims—are based on the contention that the Products warrant they will "reliably adhere to her body and deliver a 4% lidocaine dose for 12 hours'" (or 8 hours, Product depending).  (Dkt. 1 ¶¶ 8, 45, 62, 86, 96, 103.)  This contention is a manifestly unreasonable interpretation of a clear product label.

The Product boxes contain the statements "Maximum Strength" and, separately, "Up to 12 Hours" (or 8 hours depending on the Product).  (*Id.* ¶ 10.)  The Product packaging specifically states that the Products contain 4% lidocaine as the active ingredient.  (*Id.*; Dkt. 1-3.)  Two of the Products likewise provide the directions to "use 1 patch for up to 12 hours" and the third Product contains the direction "remove patch from the skin after, at most, 8-hour application."  (Dkt. 1-3.)

Plaintiff takes these two separate statements and creates her own Frankenstein representation that the Products will "deliver[] a 4% 'Maximum Strength' dose of lidocaine" for at least 12 or 8 hours.  The Products do not contain this representation—there is no representation at all regarding "delivery."  Plaintiff contends "*up to* 12 (or 8) hours" means *at least* 12 or 8 hours.  It does not.[1] Judge Karas reached this exact conclusion in an analogous case just weeks ago.  *See Turk*, 2022 WL 836894, at *8 (rejecting the view that "up to 5 days" means "at least 5 days").  Plaintiff cannot create her own misleading statement and attribute that statement to CVS.  *See, e.g.*, *Harris v. Pfizer Inc.*, -- F. Supp. 3d --, 2022 WL 488410, at *7 (S.D.N.Y. Feb. 16, 2022) (dismissing GBL claim based on an incorrect impression).  Nor can Plaintiff plausibly take issue with the "maximum strength" heading on the Products.  The Products contain 4% lidocaine, the most allowed for over-the-counter analgesics.  *See External Analgesic Drug Products for Over-the-Counter Human Use; Tentative Final Monograph*, 48 FR 5852-01, 5867 (Feb. 8, 1983); (Dkt. 1-5).  Plaintiff's attempt to rely on milligram weights and compare the Products to prescription products is unavailing.

Finally, Plaintiff does not have a GBL injury.  Plaintiff cannot claim damages in the form of the purchase price, which conflates the alleged deception with the alleged injury.  *See, e.g.*, *Izquierdo v. Mondelez Int'l, Inc*, No. 16-04697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016).  Plaintiff also does not adequately allege a price premium theory because she alleges no facts to support that the price of the product she purchased was inflated as a result of "deception."  *See id.*

---

[1]   Nor would a representation of "adhesive-ability" of a skin patch make any sense as it would depend on myriad body-specific factors, making the claim ill-suited for class treatment.

### B. Plaintiff's Warranty Claims Fail for Myriad Reasons.

<u>First</u>, as it relates to Plaintiff's claim for breach of express warranty, Plaintiff pleads no actionable affirmation. Plaintiff, as noted above, creates her own baseless representation that the Products would stay affixed for *at least* 12 or 8 hours and "deliver" an amount of lidocaine consistent with *prescription* lidocaine products. Plaintiff fails entirely to allege any facts to support that the representations at issue are false or misleading. *See Winston v. Hershey Co.*, No. 19-cv-3735, 2020 WL 8025385, at *6 (E.D.N.Y. Oct. 26, 2020); *Harris*, 2022 WL 488410, at *7.

<u>Second</u>, as it relates to Plaintiff's claims for breach of the implied warranties of merchantability and fitness for a particular purpose claim, both claims suffer from threshold defects. Plaintiff, at the outset, fails to allege that the warranty of merchantability was actually breached. Plaintiff does not contend that the Products are *unfit* for their ordinary use or that they lack a "minimal level of quality." *Harris*, 2022 WL 488410, at *8 (quoting *Caronia v. Philip Morris USA, Inc.*, 715 F. 3d 417, 433-34 (2d Cir. 2013)). She simply contends the product did not stay affixed as long or "deliver" as much lidocaine as she apparently wanted.

Furthermore, Plaintiff fails to allege (because she cannot) that the implied warranty of fitness for a particular purpose applies here—namely, that there is a specific purpose for which the Products were to be used that differs from their ordinary purpose. Plaintiff claims that the Products were to be used for "providing analgesic effects to sore muscles." (Dkt. 1 ¶ 73.) This is the *ordinary* use of the Products, and thus no such implied warranty claim can exist. *See, e.g., Tears v. Bos. Sci. Corp.*, 344 F. Supp. 3d 500, 514 (S.D.N.Y. 2018)

<u>Third</u>, Plaintiff's MMWA claim fails for two reasons. Plaintiff fails to allege the existence of a covered written warranty. See 15 U.S.C. § 2301(6)(A). And, finally, to the extent Plaintiff bases her MMWA claims on her state law warranty theories, the MMWA claim must fail along with those theories.

### C. Plaintiff Cannot Seek Equitable Relief.

Finally, Plaintiff seeks by way of her Prayer for Relief "an order of restitution and all other forms of equitable monetary relief." (Dkt. 1 at 25.) Plaintiff, however, fails to allege she lacks adequate remedies at law—a precondition to equitable relief. *See, e.g., CMG Holdings Grp. v. Wagner*, No. 15-CV-5814 (JPO), 2016 WL 4688865, at *10 (S.D.N.Y. Sept. 7, 2016) (dismissing claims for equitable relief where there were adequate remedies at law).

We thank the Court for its time and attention to this matter.

Respectfully submitted,

*/s/ Laura E. Kogan*

_____
Laura E. Kogan, Esq.