UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
MONIQUE BELL, TREE ANDERSON, and    :
MELISSA CONKLIN, *individually and on behalf of all* :
*others similarly situated*,    :
   :
               Plaintiffs,    :         **DECISION AND ORDER**
   :
        -against-    :         21-CV-6850 (PK)
   :
CVS PHARMACY, INC.,    :
   :
          Defendants.    :
   :
   :
   :
------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

In a First Amended Class Action Complaint, Monique Bell, Tree Anderson, and Melissa Conklin ("Plaintiffs") brought this action against CVS Pharmacy, Inc. ("Defendant") on behalf of themselves and all others similarly situated. (*See* First Am. Compl., Dkt. 54.) Plaintiffs allege that Defendant violated state consumer protection statutes, state warranty acts, New York General Business Law §§ 349-50, New York Warranty Act, N.Y. U.C.C. § 2-313, and The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, and was unjustly enriched.[1] (*Id.* ¶¶ 43-106.)

Plaintiffs have filed an unopposed Motion for Class Certification and Preliminary Approval of Class Action Settlement Pursuant to Fed. R. Civ. P. 23(e) ("Motion," Dkt. 55.) The parties have consented to Magistrate Judge jurisdiction. (*See* Minute Entry dated December 23, 2022.) For the reasons stated herein, Plaintiffs' Motion is granted.

---

[1] Plaintiffs allege that Defendant has violated the consumer protection statutes and warranty acts of dozens of states. (*See* First. Am. Compl. at 19 n.23, 21 n.24.)

## BACKGROUND

Plaintiff Monique Bell commenced this action on December 11, 2021 (Pls.' Mem. at 2, Dkt. 57; Settlement Agreement ¶ 1A, Ex. 1 to Marchese Decl., Dkt. 57-1), alleging that Defendant sold its name-brand lidocaine patches under the false pretenses that they delivered a "maximum strength" dose of lidocaine for up to 12 or 8 hours. (Compl. ¶ 3, Dkt. 1.; Pls.' Mem. at 2; Marchese Decl. ¶ 4; Settlement Agreement ¶ 1A.) Defendant filed its answer on February 14, 2022, asserting fifteen affirmative defenses. (Answer, Dkt. 14; Pls.' Mem. at 3; Marchese Decl. ¶ 5; Settlement Agreement ¶ 1B.) Defendant filed its Motion for Judgment on the Pleadings on May 18, 2022, and Plaintiff Bell filed her Opposition to Defendant's Motion on July 1, 2022. (Pls.' Mem. at 3; Settlement Agreement ¶ 1F; Dkt. 42, 46.)

On May 20, 2022, Plaintiff Bell and Defendant agreed to participate in private mediation. (Pls.' Mem. at 2-3; Settlement Agreement ¶ 1G.) In preparation for the mediation, the parties began informal discovery, exchanged briefs on their respective positions, and engaged in "extensive" telephonic and in-person meetings, thus allowing the parties to "completely assess the strengths and weakness[es] of their claims and defenses and their relative negotiating positions." (Pls.' Mem. at 4; Marchese Decl. ¶ 11; Settlement Agreement ¶ 1H.) On September 28, 2022, the parties attended a full-day mediation before the Honorable Frank Maas of JAMS New York but failed to reach an agreement. Subsequently, the parties accepted Judge Maas' mediator's proposal and negotiated the remaining material terms of the settlement. (Pls.' Mem. at 1, 4; Marchese Decl. ¶ 12; Gucovschi Decl. ¶ 5, Dkt. 57-2; Settlement Agreement ¶ 1I.) Defendant agreed to permit Plaintiff Bell to file a First Amended Complaint, which she did on April 21, 2023, naming Tree Anderson and Melissa Conklin as additional named plaintiffs and expanding the scope of Defendant's products at issue to include

lidocaine creams and sprays ("Products").[2] (First. Am. Compl. at 1, ¶ 1; Marchese Decl. ¶ 15; Settlement Agreement ¶ 1J.)

The parties informed the Court on November 11, 2022, that they had reached a settlement agreement in principle. (Dkt. 48.) The Motion was filed on March 24, 2023.

## DISCUSSION

### I.      Preliminary Certification of Rule 23 Settlement Class

Plaintiffs move to certify, with no opposition from Defendant, a class ("Settlement Class" or "Class") for settlement purposes comprised of all persons ("Settlement Class Members" or "Class Members") who purchased the Products in the United States from December 11, 2017 to the entry of this Order ("Class Period").[3] (Settlement Agreement ¶¶ 2.12, 2.33, 2.41.) While Plaintiffs have asked for certification of the Class, "[t]he ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement." Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment. The Court may, however, grant preliminary approval when it will "likely be able to. . . certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 50 (E.D.N.Y. 2019) (quoting Fed. R. Civ. P. 23(e)(1)(B)(ii)).

To qualify for certification, a class must meet the prerequisites set forth in Rule 23 of the Federal Rules of Civil Procedure. A plaintiff seeking certification under Rule 23 has the burden to establish (1) numerosity, (2) commonality, (3) typicality, (4) adequacy of representation, (5) superiority of the class action over other procedures, and (6) predominance. *Mazzei v. Money Store*, 829 F.3d 260,

---

[2] Specifically, the Products are "all CVS-branded 'maximum strength' lidocaine patches, creams, roll-ons, and spray products, including, but not limited to, the products listed in the First Amended Complaint. (ECF No. 53-1.) The Products include the following SKU numbers: 376649, 405343, 977934, 328522, 405623, 250483, 385037, 249024, 235554, 383998, 238921, 197229, 450467, 371271, 188721, 256563, 196728, 256518, 384034, 234274, 834344, 388642." (Settlement Agreement ¶ 2.33.)

[3] Certain purchasers are excluded from the Settlement Class, including those who purchased or acquired the Products for resale. (*See* Settlement Agreement ¶ 2.41.)

270 (2d Cir. 2016); *see* Fed. R. Civ. P. 23(a), (b)(3). The Second Circuit has also recognized an implied requirement of ascertainability. *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015) ("Like our sister Circuits, we have recognized an 'implied requirement of ascertainability' in Rule 23 of the Federal Rules of Civil Procedure" (citation omitted)); *see McBean v. City of N.Y.*, 260 F.R.D. 120, 132-33 (S.D.N.Y. 2009). To certify a class, a district court must definitively assess each class certification element and find that each requirement is "established by at least a preponderance of the evidence." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013) (quoting *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010)).

Plaintiffs contend, and Defendant does not oppose, that for purposes of the settlement, the proposed Class meets the requirements of Rule 23. (Pls.' Mem. at 17.) However, "the Court bears an independent responsibility to make a determination that every Rule 23 requirement is met before certifying a class." *Farinella v. Paypal, Inc.*, 611 F. Supp. 2d 250, 260-61 (E.D.N.Y. 2009).

## A. Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs contend that a total of 9,514,038 Product units have been sold during the Class Period. (Pls.' Mem. at 17; Marchese Decl. ¶ 13.) Based on that information, it is nearly certain that the proposed Class contains at least 40 members. Accordingly, the numerosity requirement is met.

## B. Commonality

Federal Rule of Civil Procedure 23(a)(2) requires that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement can be satisfied "where a single issue of law or fact is common the class," *In re IndyMac Mortgage-Backed Sec. Litig.*, 286 F.R.D. 226, 233 (S.D.N.Y. 2012), so long as "the class members have suffered the same injury." *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (citation omitted). Any common questions "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* at 350.

As purchasers of the Products, the proposed Class Members share common questions of law and fact regarding the misleading or deceptive labeling of the Products. This is sufficient to meet the commonality requirement. *See, e.g.*, *de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 337 (S.D.N.Y. 2021) ("As other courts in this district have held, whether a label that is uniform across products is false and/or misleading is common to all Class Members and is apt to drive the resolution of the litigation, because the same generalized evidence will be used to prove plaintiffs' claims"); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 530 (E.D.N.Y. 2017) ("Because whether or not the product name was misleading or deceptive to a reasonable consumer is a single question of fact, it was not necessary for all of the plaintiffs to have had a uniform experience with respect to the product") (citing *Ackerman v. Coca-Cola Co.*, No. 09-CV-395 (DLI)(RML), 2013 WL 7044866, at *10 (E.D.N.Y. July 18, 2013) (marks omitted)). The commonality requirement is, therefore, satisfied.

## C. Typicality

Federal Rule of Civil Procedure 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Although the analysis of typicality and commonality 'tend to merge,' each is 'distinct.'" *Kurtz*, 321 F.R.D. at 532 (citing *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 104 (E.D.N.Y. 2011)). "'The commonality requirement tests the definition of the class itself,' while 'the typicality requirement focuses on how the named plaintiff's claims compare to the claims of the other class members.'" *Id.*

Plaintiffs' claims are typical of the Class. Their claims, and those of each Class Member, arise from Defendant's alleged misleading and deceptive labeling of its Products. "[A]llegedly deceptive

labeling and marketing, common to all products at issue, satisfies typicality." *Wang v. Tesla, Inc.*, 338 F.R.D. 428, 437 (E.D.N.Y. 2021). Therefore, the typicality requirement is satisfied.

### D. Adequacy

Federal Rule of Civil Procedure 23(a)(4) requires that the class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining the adequacy of representation by class representatives and class counsel, courts consider "whether (1) plaintiff's interests are antagonistic to the interest[s] of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG)(RER), 2021 WL 1259559, at *4 (E.D.N.Y. Jan. 6, 2021) (alteration in original) (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)). "'An adequate class representative is one who has 'an interest in vigorously pursuing the claims of the class' and 'no interests antagonistic to the interests of other class members.'" *Id.* (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). "Courts find class counsel qualified when they are experienced and 'knowledge[able] in the area of complex class actions.'" *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-CV-456 (RPK)(LB), 2021 WL 7906584, at *5 (E.D.N.Y. May 25, 2021) (alteration in original) (quoting *In re Payment Card*, 330 F.R.D. at 33), *R&R adopted*, Order dated Nov. 22, 2021.

Plaintiffs' interests here "are aligned with other class members' interests because they suffered the same injuries," namely, that they all purchased the Products that were allegedly misleadingly and deceptively labeled. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). Plaintiffs seek monetary and injunctive relief on their own behalf and on behalf of the Class. (*See* First Am. Compl. ¶¶ 48, 56, 65, 77, 87, 95, 106; Settlement Agreement ¶¶ 4.1, 10.3.) There is no basis for finding that Plaintiffs lack a shared interest with the other Class Members.

Proposed class counsel, Bursor & Fisher, P.A. and Gucovschi Rozenshteyn, PLLC are qualified, experienced, and have been actively involved throughout the pendency of this litigation. (*See*

Bursor & Fisher, P.A. Firm Resume at 12-13, Ex. 2 to Marchese Decl., Dkt. 57-1; Gucovschi Decl. ¶¶ 3-5.) They have engaged in discovery, motion practice, mediation, and settlement discussions. (Marchese Decl. ¶¶ 14-15; Gucovschi Decl. ¶¶ 3-6.) They have collectively brought dozens of similar actions across the country. (Bursor & Fisher, P.A. Firm Resume at 1-6; Gucovschi Rozenshteyn, PLLC Firm Resume at 4 (ECF Pagination), Ex. 1 to Gucovschi Decl., Dkt. 57-2.)

Plaintiffs and the proposed class counsel are adequate representatives of the class. Thus, the adequacy requirement is met.

### E. Ascertainability

The implied requirement of ascertainability demands "only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017).

The proposed Class is easily ascertainable. The Class is limited to those individuals who purchased the Products, defined by name and SKU number, in the United States during the Class Period, from December 11, 2017 to the entry of this Order.

### F. Rule 23(b)(3)

Federal Rule of Civil Procedure 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### 1. Predominance

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and is achieved "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to

individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

Here, the common evidence of the alleged deceptive labeling would include "the Products' packaging as well as consumer survey evidence and expert testimony as to damages and merits-liability issues." (Pls.' Mem. at 20.) Defendant does not contest that the Products' labeling constitutes "generalized evidence that is likely to drive the litigation." (*Id.* (citing *de Lacour*, 338 F.R.D. at 337).) The Class is thus sufficiently cohesive to meet the predominance requirement.

### 2. *Superiority*

The superiority requirement considers:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Morangelli*, 275 F.R.D. at 116 (citing Fed. R. Civ. P. 23(b)(3)). In assessing a settlement-only class certification, "a district court need not inquire whether the case, if tried, would present intractable management problems," because there will not be a trial. *Amchem*, 521 U.S. at 620.

There is no indication that other Class Members have commenced separate litigation or have any interest in controlling a separate action. "Consolidating a class involving so many potential plaintiffs would promote judicial economy." *Stinson v. City of N.Y.*, 282 F.R.D. 360, 383 (S.D.N.Y. 2012). A class action is also far superior to requiring the claims to be tried individually "given that the likely monetary relief is not likely to exceed the costs of pursuing an individual claim." *Hill v. City of N.Y.*, No. 13-CV-6147 (PKC)(JO), 2019 WL 1900503, at *10 (E.D.N.Y. Apr. 29, 2019); *see also Stinson*, 282 F.R.D. at 383 ("the relatively small amount of damages suffered by each individual plaintiff decreases the possibility of individual lawsuits being filed"). The superiority requirement is met because a class action is superior to alternative forms of adjudication of these claims.

*       *       *

For the foregoing reasons, the Court finds that preliminary certification of the Settlement Class, with preliminary approval of Plaintiffs serving as Class Representatives, is warranted under Federal Rules of Civil Procedure 23(a) and 23(b)(3) because the Court will likely be able to certify the class after the final approving hearing.

## II.     Appointment of Class Counsel and Settlement Administrator

Plaintiffs request, with no opposition from Defendant, that the Court appoint Bursor & Fisher, P.A. and Gucovschi Rozenshteyn, PLLC, as Class Counsel.

When appointing class counsel, courts must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(a).

As discussed in Section I.D, *supra*, both Bursor & Fisher, P.A. and Gucovschi Rozenshteyn, PLLC have engaged in discovery, motion practice, mediation, and settlement discussions related to this case. (Marchese Decl. ¶¶ 14-15; Gucovschi Decl. ¶¶ 3-6.) Both law firms have significant experience handling class actions related to false advertising of consumer goods. (*See* Bursor & Fisher, P.A. Firm Resume at 1-6; GR Firm Resume at 4 (ECF Pagination).) The Court finds that Bursor & Fisher, P.A. and Gucovschi Rozenshteyn, PLLC are qualified and adequate and, therefore, preliminarily appoints them as Class Counsel.

The parties also seek the appointment of Kroll Settlement Administration ("Kroll") as the Settlement Administrator. Kroll and its Managing Director, Jeanne C. Finegan, have decades worth of experience overseeing notice programs for class actions, many of which have been upheld across the country. (Finegan Decl. ¶¶ 4-11.) Therefore, the Court appoints Kroll as the Settlement Administrator in accordance with its duties outlined in the Settlement Agreement.

## III.     Preliminary Approval of the Proposed Settlement

"A class action settlement approval procedure typically occurs in two stages: (1) preliminary approval—where 'prior to notice to the class, a court makes a preliminary evaluation of fairness,' and (2) final approval—where 'notice of a hearing is given to the class members, [and] class members and settling parties are provided the opportunity to be heard on the question of final court approval.'" *In re Payment Card*, 330 F.R.D. at 27 (alteration in original) (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-CV-5450 (NRB), 2016 WL 7625708, at \*2 (S.D.N.Y. Dec. 21, 2016)).

Factors relevant to the Court's decision whether to approve a proposed class action settlement include "(1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members." *Id.* (citing Fed. R. Civ. P. 23(e)(2)).  Courts look to the nine "*Grinnell* factors to fill in any gaps and complete the analysis." *Cymbalista* 2021 WL 7906584, at \*5 (collecting cases).  These include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *accord Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013).

Considering both the procedural and substantive factors set forth in Fed. R. Civ. P. 23(e)(2), as well as the *Grinnell* factors, I find that the Court will likely be able to approve the parties' proposed Settlement Agreement as fair, reasonable, and adequate.

**A. Rule 23(e)(2) Factors**

*1. Adequate Representation by Class Representatives and Class Counsel – Fed. R. Civ. P. 23(e)(2)(A)*

In determining the adequacy of representation by class representatives and class counsel, courts consider "whether (1) plaintiff's interests are antagonistic to the interest[s] of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Mikhlin* 2021 WL 1259559, at *4 (alteration in original) (quoting *Cordes & Co. Fin. Servs.*, 502 F.3d at 99).[4]

As discussed in Section I.D, *supra*, Plaintiffs and Class Counsel are adequate representatives of the class. This factor weighs in favor of preliminary approval.

*2. Arm's Length Negotiation – Fed. R. Civ. P. 23(e)(2)(B)*

A class settlement "reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation . . . 'enjoy[s] a presumption of fairness.'" *In re GSE Bonds*, 414 F. Supp. 3d at 693 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000)); *accord Mikhlin*, 2021 WL 1259559, at *5.

The Settlement Agreement was reached after months of settlement discussions culminating in a full-day mediation before the Honorable Frank Maas of JAMS New York, who created a proposal that the parties accepted. (Pls.' Mem. at 4; Marchese Decl., ¶¶ 8-12; Gucovschi Decl. ¶¶ 5-6; Settlement Agreement ¶¶ 1G-I.) Settlement negotiations were conducted at arm's length with experienced and capable counsel representing each side. (Pls.' Mem. at 14; Marchese Decl., ¶¶ 10-12; Settlement Agreement ¶¶ 14.10, 14.19, 14.30.)

This factor weighs in favor of preliminary approval.

---

[4] "Because this factor is 'nearly identical to the Rule 23(a)(4) prerequisite of adequate representation in the class certification context,'" the Court's consideration of this factor is guided by Rule 23(a)(4) case law. *Mikhlin*, 2021 WL 1259559, at *4 n.3 (quoting *In re Payment Card*, 330 F.R.D. at 30 n.25).

### 3. *Adequate Relief for the Class – Fed. R. Civ. P. 23(e)(2)(C)*

In evaluating whether the proposed settlement provides adequate relief for the class, the Court considers: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including the timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

### a. **Costs, Risks, and Delay of Trial and Appeal – Fed. R. Civ. P. 23(e)(2)(C)(i)**

The first factor set forth under Rule 23(e)(2)(C), "the 'costs, risks, and delay of trial and appeal,' 'subsumes several *Grinnell factors*,' including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial." *Mikhlin*, 2021 WL 1259559, at *5 (quoting *In re Payment Card*, 330 F.R.D. at 36); *accord Cymbalista*, 2021 WL 7906584, at *6.

Courts favor settlement when it "results in 'substantial and tangible present recovery, without the attendant risk and delay of trial.'" *In re Payment Card*, 330 F.R.D. at 36 (quoting *Sykes v. Harris*, No. 09-CV-8486 (DC), 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016) (citation omitted)). Class action lawsuits "have a well-deserved reputation as being most complex." *Id.* (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (citation omitted)); *see also Garland v. Cohen & Krassner*, No. 08-CV-4626 (KAM)(RLM), 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011) ("Given the complexity of any class action lawsuit . . . it is reasonable to assume that absent the instant Settlement, continued litigation would have required extensive time and expense.").

"In considering the risks of establishing liability, the court 'need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'" *Mikhlin*, 2021 WL 1259559, at *5 (quoting *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)). "Settlement is favored in cases in which 'plaintiffs would have faced significant legal and factual

obstacles to proving their case.'" *Id.* (quoting *In re Glob. Crossing*, 225 F.R.D. at 459). A court also considers the settlement agreement's proposed release from liability. *See In re Payment Card*, 330 F.R.D. at 36.

Given the "fact-intensive" nature of Plaintiffs' claims (Initial Conference Tr. at 11, 13, Dkt. 38), had this case progressed to trial, Plaintiffs would have experienced risk in proving liability and damages. Defendant noted that Plaintiffs' theory of the case was "very novel" (*Id.* at 5) and asserted fifteen affirmative defenses in its Motion for Judgment on the Pleadings. (Marchese Decl. ¶ 5.)

By commencing mediation and reaching an agreement prior to any formal discovery, the parties have avoided significant expenses. The next steps in the litigation, absent settlement, would include "Defendant refiling its motion for judgment on the pleadings . . . depositions of witnesses, substantial electronically stored discovery, third-party and expert discovery, and contested motions for summary judgment and class certification," all of which would be "costly and time-consuming." (Pls.' Mem. at 9.) The agreed upon settlement avoids the costs and expenses associated with extended litigation.

The parties have stipulated to Rule 23 class certification for settlement purposes only. (Settlement Agreement ¶ 3.2.) If this case were to proceed instead of settling, Defendant, who contests Plaintiffs' allegations, could oppose class certification, making further the uncertainty of Plaintiffs prevailing. *See In re Payment Card*, 330 F.R.D. at 40 (finding this factor "'weighs in favor of settlement' where 'it is likely that defendants would oppose class certification' if the case were to be litigated" (quoting *Garland*, 2011 WL 6010211, at *8)).

In sum, the "costs, risks and delay of trial and appeal" are significant and weigh in favor of preliminary approval of the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(i).

### *b.* <u>Effectiveness of Proposed Method of Distributing Relief – Fed.</u> <u>R. Civ. P. 23(e)(2)(C)(ii)</u>

A court must consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "[U]niform relief to all [class members] … constitutes effective distribution." *Berni v. Barilla G. e R. Fratelli, S.p.A.*, 332 F.R.D. 14, 33 (E.D.N.Y. 2019), *vacated and remanded on other grounds sub nom.* 964 F.3d 141 (2d Cir. 2020). "A plan for allocating settlement funds 'need not be perfect[,]'" and "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Mikhlin*, 2021 WL 1259559, at *6 (first quoting *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-CV-10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007); then quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)).

The Settlement Agreement includes a detailed proposal for calculating and distributing the payout to each Class Member. (*See* Settlement Agreement ¶¶ 6.1-6.6.) The parties have selected an experienced Settlement Administrator, Kroll, who will be responsible for processing claims and issuing payments to the Class Members. (*See Id.* ¶¶ 2.40, 5.1-5.7.) Within 35 days of the "Effective Date," *i.e.*, the date on which the Settlement Agreement becomes final after approval, Defendants agree to fund all amounts required by the Settlement Agreement, comprised of the Settlement Sum of $3,800,000.00 and reasonable Administration Expenses. (*See Id.* ¶¶ 2.19, 2.42, 6.2.) Within 49 days of the Effective Date, the Settlement Administrator will disperse payments either electronically or via mailed check to Class Members who submitted valid claims. (*See Id.* ¶¶ 5.7(g), 6.3; Claim Form at 1, Ex. A to Settlement Agreement, Dkt. 57-1.) Class Members who provide proof of purchase may recover $4.50 per purchased unit without limitation, while Class Members who do not provide valid proof of purchase may recover $4.50 per purchased unit for up to three units. (*See* Settlement Agreement ¶ 4.1(A).)

Plaintiffs may seek additional Class Representative Service Awards of $3,000 each, as compensation for their efforts in bringing the action. (*See* Settlement Agreement ¶ 7.2.)

If the amount to be paid as a result of valid claims exceeds the amount of the Settlement Sum that remains after the payment of Class Representative Service Awards and Class Counsel's Fee Award, then the Settlement Agreement provides that the amount payable to each Class Member making a claim will be reduced proportionally. (*See* Settlement Agreement ¶ 4.6.)

The distribution plan, thus, appears fair and equitable. This factor weighs in favor of preliminary approval.

### c. Terms of Proposed Award of Attorneys' Fees, Including Timing of Payment – Fed. R. Civ. P. 23(e)(2)(C)(iii)

"When analyzing the proposed settlement agreement for final approval, this Court will review Plaintiffs' application for attorneys' fees, taking into account the interests of the class." *Hart v. BHH, LLC*, 334 F.R.D. 74, 79 (S.D.N.Y. 2020). One method for calculating attorneys' fees, which is the trend in this Circuit, is the "'percentage of the fund' method." *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 384 (S.D.N.Y. 2017). Under this method, the Court considers whether the requested fees are reasonable as compared to the settlement amount. *Id.* at 385. Factors to consider include fees awarded in similar cases, the risks to class counsel, and the lodestar calculation. *Id.* at 384 (citing *Goldberger*, 209 F. 3d. 43).

Of the $3,800,000 Settlement Sum, Class Counsel may submit an application seeking attorneys' fees of no more than $1,140,000.00, amounting to 30% of the total settlement sum (Settlement Agreement ¶¶ 2.3, 2.42, 7.2.) Class Counsel has not yet submitted a lodestar calculation. The Court, therefore, defers ruling on the reasonableness of the requested attorneys' fees until a motion for final settlement approval is filed.

This factor does not weigh against preliminary approval.

### d. Other Agreements by the Parties – Fed. R. Civ. P. 23(e)(2)(C)(iv)

The parties are required to "identify[] any agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. 23(e)(3).

The parties have not entered into any agreements other than the Settlement Agreement. (*See* Pls.' Mem. at 16.) This factor does not weigh against preliminary approval.

### 4. *Equitable Treatment of Class Members Relative to Each Other – Fed. R. Civ. P. 23(e)(2)(D)*

A court must consider whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). A court may consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment.

As stated in section III.A.3.b, *supra*, the method of distribution appears fair and equitable. The apportionment of relief is based on the number of Product units purchased, with Class Members receiving a payment of $4.50 per Product unit claimed. Those who do not provide proof of purchase are limited to recovery for up to three units purchased, while those who do provide proof of purchase are not so limited. (Settlement Agreement ¶ 4.1.) Any reduction in the payment amount due to an excessive number of claims will be shared in equal proportion by the claimants. (*Id.* ¶ 4.6.) This factor weighs in favor of preliminary approval.

### B. Remaining Grinnell Factors

The *Grinnell* factors not covered by Rule 23(e)(2)(C)(i) are the reaction of the class to the settlement, the stage of the proceedings and the amount of discovery completed, the ability of the defendants to withstand a greater judgment, the range of the settlement fund in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. A court's consideration of the stage of the proceedings and

the amount of discovery completed "is intended to assure the Court 'that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them.'" *In re Glob. Crossing*, 225 F.R.D. at 458 (quoting *Klein ex rel. Ira v. PDG Remediation, Inc.*, No. 95-CV-4954 (DAB), 1999 WL 38179, at *2-3 (S.D.N.Y. Jan. 28, 1999)).

The Court cannot consider the Class's reaction to the proposed settlement until after notice has been provided to the Class. The Court is therefore unable to consider this factor at this stage in the proceedings. *See Mikhlin*, 2021 WL 1259559, at *4 n.2; *Caballero ex rel. Tong v. Senior Health Partners, Inc.*, Nos. 16-CV-0326 (CLP), 18-CV-2380 (CLP), 2018 WL 4210136, at *11 (E.D.N.Y. Sept. 4, 2018).

With regard to the remaining factors, the parties conducted informal, but "substantial discovery" (Gucovschi Decl. ¶ 4) over the course of multiple months, exchanged briefings, held regular conferences, and participated in a full day of mediation, allowing them to "completely assess the strengths and weakness[es] of their claims and defenses." (Pls.' Mem. at 4; Marchese Decl. ¶ 11; Settlement Agreement ¶ 1H.) The terms of the Settlement Agreement are comprehensive and provide Class Members with clearly described monetary relief which is reasonable in light of the risks and inherent uncertainty of trial. Moreover, pursuant to the Settlement Agreement, Defendant will remove the allegedly deceptive labeling at issue, benefitting Class Members and future consumers. (*See* Pls.' Mem. at 5; Settlement Agreement ¶¶ 10.1, 10.3.) *See Patti's Pitas, LLC v. Wells Fargo Merchant Services, LLC*, 17-CV-4583 (AKT), 2021 WL 5879167, at *3 (E.D.N.Y. July 22, 2021) (noting that the settlement was reasonable under *Grinnell* in part because it provided "substantial valuable non-monetary relief (*i.e.*, practice changes)"); *Stinson v. City of N.Y.*, 256 F. Supp. 3d 283, 294 (S.D.N.Y. 2017) (finding that the settlement was reasonable under *Grinnell* in part because of "the many non-monetary remedial measures Defendants will take"). While Defendant could likely withstand a greater judgment, "this factor standing alone does not mean that the settlement is unfair"; rather, "it supports

the conclusion that the settlement is fair under all the circumstances." *Philemon v. Aries Capital Partners, Inc.*, No. 18-CV-1927 (CLP), 2019 WL 13224983, at *12 (E.D.N.Y. July 1, 2019).

Class Counsel appear to have filed the Motion with "a thorough understanding of the strengths and weaknesses of their case," *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 156 (S.D.N.Y. 2013), and "the requisite information to make [an] informed decision[] about the relative benefits of litigating or settling." *In re Glob. Crossing*, 225 F.R.D. at 458.

This factor weighs in favor of settlement.

*     *     *

Having weighed the Rule 23(e)(2) and *Grinnell* factors, I find that the Court will likely be able to approve the proposed settlement as fair, reasonable, and adequate.

### IV.     Distribution of the Class Notice

Once a court has determined that it will likely be able to approve the proposed settlement and certify the class, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ." Fed. R. Civ. P. 23(e)(1)(B). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements . . . .Notice is adequate if it may be understood by the average class member." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citation omitted). At the same time, "[c]ourts in this Circuit have explained that a Rule 23 Notice will satisfy due process when it describes the terms of the settlement generally, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." *Mikhlin*, 2021 WL 1259559, at *12 (quoting *In re Payment Card*, 330 F.R.D. at 58).

According to information Defendant provided to Plaintiffs, Defendant sold a total of 9,514,038 Product units during the Class Period. (Marchese Decl. ¶ 13.) To reach as many Class

Members as possible, the Settlement Agreement proposes a "Notice Program" providing multiple forms of notice.

Within fourteen days after the entry of this Order, Defendant agrees to provide the Settlement Administrator with an electronic list from its records that includes all the names and email addresses, to the extent they exist in Defendant's records, of persons within the Settlement Class who are members of Defendant's ExtraCare loyalty program (the "Class List"). (Settlement Agreement ¶ 8.1.) Within thirty-five days of receiving the Class List, the Settlement Administrator will email the proposed "Direct Notice" to each member of the Class List. (*Id.* ¶ 8.1.) If the first attempt to deliver any emails fails, the Settlement Administrator will resend a second email. (*Id.* ¶ 8.1.)

The Direct Notice describes this lawsuit, the Class, and the basic terms of the Settlement Agreement; it also provides information on how to submit a claim form, exclude oneself from the settlement, or object to the settlement, and it also directs Class Members to the "Settlement Website" for further information. (Direct Notice at 74-76 (ECF Pagination), Ex. C-1 to Settlement Agreement, Dkt. 57-1; Settlement Agreement ¶¶ 2.18, 8.1.) The Settlement Website will contain, among other things, the Settlement Agreement, the Direct Notice, the "Long-Form Notice," and the "Claim Form." (Settlement Agreement ¶¶ 2.43, 8.3.) The Long-Form Notice provides more details on this lawsuit and instructions on how Class Members can submit a claim form, contact Class Counsel, exercise their right to object to or comment on the settlement, and announces the date, time, and location of the Final Approval Hearing.[5] (Long Form Notice at 1-2, 4-12, Ex. B to Settlement Agreement, Dkt. 57-1; Settlement Agreement ¶ 2.23.) The Claim Form notes the deadline by which to return the form, a detailed explanation of the form's requirements, and the settlement amount that the Class Member making the claim will receive. (Claim Form at 1-3.)

---

[5] The proposed notice should be amended to state the correct courtroom for Judge Kuo, which is 11C South.

Recognizing that Defendant does not likely possess a list of all potential Class Members because not all purchasers of the Products were or are members of the ExtraCare loyalty program, the Settlement Administrator will also implement electronic publication notice in the form of online banner ads, search term advertisements, and social media advertisements. (Settlement Agreement ¶¶ 2.24, 8.2; Finegan Decl. ¶¶ 3, 16-20, Dkt. 57-3.) When users click on these ads, an embedded link will take them to the Settlement Website for further information. (Finegan Decl. ¶¶ 26-27.)

The Settlement Administrator estimates that the publication notice will "achieve no less than 70% reach to Settlement Class Members," reaching each Class Member about four times (Settlement Agreement ¶ 2.24; *see* Finegan Decl. ¶¶ 3, 16, 22.) According to the Federal Judicial Center, "a notice plan that reaches between 70 and 95 percent of the class is reasonable." *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 527 F. Supp. 3d 269, 273 (E.D.N.Y. 2021) (citing Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf.). Because the Class Notice will apprise Class Members of the terms of the settlement and of their rights as Class Members, and because the Settlement Agreement's suggested methods of providing notice appear calculated to reach no fewer than 70% of Class Members, I find that the Class Notice is reasonable under Rule 23 and satisfies constitutional due process.

## CONCLUSION

For the reasons stated above, the Motion is granted. Accordingly, it is hereby ORDERED that:

1. Preliminary Class Certification for Settlement Purposes Only: Pursuant to Fed. R. Civ. P. 23, the Court preliminarily certifies, solely for purposes of effectuating the Settlement Agreement, the following Settlement Class:

> All persons who purchased Products in the United States during the Class Period. Excluded from the Settlement Class are: (a) all

persons who purchased or acquired the Products for resale; (b) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; (c) any person who makes a valid, timely opt-out request; (d) federal, state, and local governments (including all agencies and subdivisions thereof but excluding employees thereof), and (e) the judges to whom this action is assigned and any members of their immediate families.

The Court preliminarily finds, solely for purposes of the Settlement, that the Rule 23 criteria for certification of the Settlement Class have been met in that: (a) the Settlement Class is so numerous that joinder of all Settlement Class Members in the action is impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) the claims of the Class Representatives are typical of the claims of the Settlement Class; (d) the Class Representatives and Class Counsel have and will continue to fairly and adequately represent and protect the interests of the Settlement Class; and (e) a class action is superior to all other available methods for the fair and efficient adjudication of the controversy. In addition, the Court finds that preliminary certification of the Settlement Class is appropriate when balanced against the risks and delays of further litigation.

2. <u>Class Representatives and Class Counsel</u>: The Court preliminarily appoints the law firm of Bursor & Fisher, P.A. and Gucovschi Rozenshteyn, PLLC as Class Counsel for the Settlement Class. The Court preliminarily appoints Plaintiffs Monique Bell, Tree Anderson, and Melissa Conklin as Class Representatives.

3. <u>Preliminary Approval of Settlement</u>: The Court preliminarily approves the Settlement Agreement, and its terms, as fair, reasonable, and adequate under Rule 23, subject to further consideration at the Final Approval Hearing described below.

4. <u>Class Notice</u>: The Court approves the form and content of the proposed Long-Form Notice and Direct Notice (Exs. B and C-1 to Settlement Agreement) and Claim Form (Ex.

A to Settlement Agreement). The Court further finds that the method of dissemination of the Notice in the manner set forth in the Settlement Agreement, as well as the establishment of a Settlement Website, satisfy Rule 23 and due process, and constitutes the best notice practicable under the circumstances. The Notice Program set forth in the Settlement Agreement is reasonably calculated to apprise the Settlement Class of the pendency of the action, the class certification for settlement purposes only, the terms of the Settlement Agreement and benefits afforded, the Settlement Class Members' rights including the right to opt-out of or object to the Settlement and the deadlines and procedures for doing so, the deadline, procedures and requirements for submitting a claim pursuant to the settlement, Class Counsel's application for attorneys' fees and expenses and class representative service awards for the Class Representatives, the time, place, and right to appear at the Final Approval Hearing, and other pertinent information about the settlement and the Settlement Class Members' rights. The Court authorizes the parties to make non-material modifications to the notice documents and Claim Form if they jointly agree that any such changes are appropriate.

5. <u>Administration</u>: The Court appoints Kroll Settlement Administration as Settlement Administrator. The Settlement Administrator is directed to perform all settlement administration duties set forth in, and pursuant to the terms and time periods of, the Settlement Agreement, including mailing of the CAFA Notice, implementing and maintaining the Settlement Website, effectuating the Notice Program, the Media Plan, the processing, review and determination of timely submitted and proper claims under the settlement, and the preparation of any declarations and other necessary materials to be submitted to the Court, as well as any other duties required under the Settlement Agreement.

6.  <u>Exclusion from Class</u>: Any Settlement Class Member who wishes to be excluded from the Class must send to the Settlement Administrator by U.S. Mail a request for exclusion postmarked no later than the opt-out/objection deadline. The request for exclusion must be a personally signed request from the Settlement Class Member including (1) his/her/their name, address, and telephone number; (2) the name and number of this case; (3) documents or information sufficient to establish the person's standing as a Settlement Class Member (including the Product purchased and date and location of purchase); (4) a statement that he/she/they wishes/wish to be excluded from the Settlement Class; and (5) a signature. A Class Member can exclude only himself/herself/themselves from the Class, and shall not be allowed to request that another individual or group be excluded. "Mass" or "class" opt-outs are not permitted. At least seven (7) calendar days before the deadline to file the Motion for Final Approval, Class Counsel will prepare or cause the Settlement Administrator to prepare a list of the persons who have excluded themselves in a valid and timely manner from the Settlement Class, and Class Counsel will file that list with the Court.

    If the proposed Settlement is finally approved, any Settlement Class Member who has not submitted a timely written request for exclusion on or before the opt-out/objection deadline shall be bound by all terms of the agreement and the Final Approval Order and final judgment, even if the Settlement Class Member previously initiated or subsequently initiates any litigation against any or all of the Released Parties relating to Released Claims. All persons or entities who properly exclude themselves from the Settlement Class shall not be Settlement Class Members and shall relinquish their rights or benefits under the Settlement Agreement, should it be approved, and may not file an objection to the settlement or be entitled to any settlement benefits.

7. <u>Objections</u>: Any Settlement Class Member who has not filed a timely written request for exclusion may object to the fairness, adequacy, or reasonableness of the Settlement Agreement, the requested award of attorneys' fees and expenses, and/or class representative service awards.

In order to object, the objection must contain: (i) a caption or title that identifies it as "Objection to Class Settlement in Bell v. CVS Pharmacy, Inc."; (ii) contact and address information for the objecting Settlement Class Member; (iii) documents sufficient to establish the person's standing as a Settlement Class Member (including the Product purchased and date and location of purchase); (iv) the facts supporting the objection; (v) the legal grounds on which the objection is based, including all citations to legal authority and evidence supporting the objection; (vi) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objecting Settlement Class Member in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection (the "Objecting Attorneys"), and (vii) the objecting Settlement Class Member's signature (an attorney signature is not sufficient). If a Settlement Class Member or any of the Objecting Attorneys has objected to any class action settlement within the last five years, then the objection must include a statement identifying each such case by full case caption and amount of payment received. No mass or class objections will be permitted.

Any objecting Class Member may appear, in person or by counsel, at the Final Approval Hearing to explain why the proposed Settlement should not be approved as fair, reasonable, and adequate, or to object to any motion for attorneys' fees and expenses or class representative service awards. To appear, the objecting Settlement Class Member must, by the opt-out/objection deadline, file with the Clerk of the Court a notice of

intention to appear at the Final Approval Hearing. The notice of intention to appear must identify: (i) whether the appearance will be through counsel, (ii) any witnesses the objecting person may call to testify at the Final Approval Hearing; and (iii) all exhibits the objecting Settlement Class Member intends to introduce into evidence at the Final Approval Hearing, which must also be attached to, or included with, the written objection. Only Settlement Class Members who submit timely objections including notices of intention to appear may speak at the Final Approval Hearing. If a Settlement Class Member makes an objection through an attorney, the Settlement Class Member will be responsible for his/her/their personal attorney's fees and costs.

Any Settlement Class Member who has not properly filed a timely objection in accordance with the deadline and requirements set forth in this Order and the Settlement Agreement shall be deemed to have waived any objections to the Settlement Agreement and any adjudication or review of the Settlement Agreement by appeal or otherwise.

8. <u>Stay of Discovery</u>: All discovery and other proceedings in this action as between Plaintiffs and Defendant are stayed and suspended until further order of the Court, except such actions as may be necessary to implement the Settlement Agreement and this Order.

9. <u>Settlement Deadlines</u>: Based on the foregoing, the Court sets the schedule below for the Final Approval Hearing and the actions which must precede it. These deadlines may be extended by order of the Court, for good cause shown, without further notice to the Settlement Class. Settlement Class Members must check the Settlement website regularly for updates and further details regarding this Settlement:

| Event | Deadline Pursuant to Settlement Agreement | Date Ordered by Court |
|---|---|---|
| Notice Date | 35 days after Preliminary Approval Granted | August 22, 2023 |
| Application for Class Representative Service Awards and Attorneys' Fees and Expenses | 14 days prior to opt-out/objection deadline | September 22, 2023 |
| Opt-out and objection deadline | 45 days after Notice Date | October 6, 2023 |
| Deadline to submit notices of intention to appear at the Final Approval Hearing | 45 days after Notice Date | October 6, 2023 |
| Claims Deadline | 90 days after Notice Date | November 20, 2023 |
| Final Approval Motion and response to any objections | 100 days after Notice Date | November 30, 2023 |
| Final Approval Hearing | 120 days after Notice Date or as soon thereafter as may be heard by the Court | December 20, 2023 |

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated: July 18, 2023
        Brooklyn, New York